Final case for argument this morning is 14-1160 In Re Adams. Whenever you're ready, Mr. Adams. My name is Robert Adams. I'm with the law firm of Nixon and Vanderhyde. And my son and I are the appellants in this case. The primary focus of this case is claim one, which relates to a lacrosse stick having a shaft, which is made from a composite mixture of titanium and carbon fibers. There are three points that I want to address. The first point is that the primary reference, which is Lewis, does not disclose either carbon fiber or titanium. It teaches the use of a graphite-loaded plastic. Now graphite is a soft and brittle carbon material. It's primarily used in lead pencils and as a lubricant, like for your front door, if it sticks. Carbon fiber is very different. It is a hard and very strong fiber material that's made from carbon atoms that are bonded together at very high temperatures in crystals and aligned in a parallel manner. So graphite and carbon fiber are different. Appley agrees that titanium is not shown or disclosed in Lewis. So the primary reference is missing both of the materials claimed in claim one. That's what Umloft is for. Ah, and that's my second point. Thank you, Your Honor. In its obvious misruling, the board relied upon a tennis racket. Now, I submit that a person of ordinary skill in lacrosse art would never in their right mind look at a tennis racket. The two sports are completely different. Lacrosse is very violent. Tennis is very not violent. I've smashed three rackets in my lifetime. I understand. I wish they were stronger. I understand that, and I'm going to get... With a knife, you know, they have titanium fiber. Well, now Lewis talks and says, it emphasizes that by saying lacrosse sticks are subject to rough contact, especially whacks and blows. So now let's look at lacrosse and tennis. In tennis, the tennis rackets are not intended for contact with other tennis rackets. Lacrosse sticks are completely the opposite. It is considered to be a great defensive step to hit as hard as you can one lacrosse stick against the other and dislodge the ball and the stick. That's called a yard sale because everything's lying on the ground. Tennis rackets are not intended to hit other players. Again, that's not true in lacrosse. You are whacking as hard as you can the hands and chest of your opponent. Tennis rackets are not intended for repeated contact with the ground. It happens, though. I know. It does happen, but it's very rare. And in fact, I'll skip some point. I'll go to a very important point. Let's go to what the board says. I understand what the board is trying to say. All the references here, and then your disclosure, are in the sporting goods art, and all of them are focused on, among other things, having high-strength, lightweight sporting goods equipment. And so, therefore, why wouldn't you look at the sporting goods equipment that's being specifically designed for high-strength and lightweight? Because when you look... In the reference, as well as the exact words out of your own disclosure. And because when you look at the sports, they are entirely different. And even if you look at those words, they have entirely different meanings. Because the board talked about similar concerns of strength, durability, and weight. Yes, both have concerns over those issues, but they are not similar concerns. The durability and strength of a lacrosse stick is entirely different because of the manner of play than is a tennis racket. The weights are entirely different. A lacrosse stick is much longer, much heavier than a tennis racket. So to merely take the superficial view and say, oh, it's got to be strong, it's got to be lightweight, and it's got to be durable, is not looking at the actual sport in reality. And it's kind of like in the Gianelli case... But doesn't that... Don't those general traits in common suggest that one of our units down there would take a peek at the tennis racket and maybe decide that the tennis racket teachings are irrelevant, they teach away from what I'm trying to do with the lacrosse stick? Two reasons why, again, nobody in the lacrosse field would ever look at a tennis racket. Number one, a tennis racket wouldn't last one minute of contact in a lacrosse context. And number two... That's a very broad statement. I mean, what happens if you have... And your son was six years old? Sixth grade. And maybe his nephew and uncle played a lot of tennis. And maybe when they went out in the backyard, the kid who lived next door had the tennis ball, and he hit the tennis ball up in the air, and your child caught it in his lacrosse stick and threw it back to him. Perfectly possible to have this exchange over the backyard fence. It's not realistic, Your Honor. You wouldn't play tennis with a lacrosse stick... How about if you lived next door to someone who didn't have a lacrosse stick, but he had a tennis ball and a tennis racket, and all you had was a lacrosse stick, and your parents said, go out and play catch. I have never seen that done. I've never heard of that. But that's not what the board has to show. You don't have to show that you would use interchangeably lacrosse sticks to play tennis or tennis rackets to play lacrosse. I agree. That's not the nature of the burden. Interchangeability is not the test. But the test is whether it would be a reasonable place to look. And I say that the nature of the sports are so different, no one would look. And I also... To get back to you... That's not really a declaration from an expert. Well, it is if nobody... All I can say is, based on... Do any of you ever play lacrosse? Yes. What position? I play attack. Okay. My sons were goalie, I was defense. But I'm glad. Class of 1959. But I want to say... We lost to Army. Wasn't that graphite loaded plastic? Wood. Wood. Yeah, when I was playing, it was wood as well. It was made of gut. It got wet and all got very hard. I want to get back to you. UMLOFT actually teaches a way. And how does it do that? Because it says when there are repeated contacts with the ground, you should put a sheath on the tennis racket to protect it. So if you go to A388, column 3, lines 37 to 39, it says, as shown in figure 2, a top portion of racket head 14 may include a sheath for protecting the frame 12 from detrimental contact with the ground or other objects. So why does that tell me you don't use titanium fibers in lacrosse? Because if that was really strong and would be effective against repeated vigorous contact with the ground, then you wouldn't need a sheath. You'd just say it's going to be strong. It's going to hold up. It doesn't need a sheath. And now I'd like to go back to this court's decisions in Gianelli and in Clay. I mean, this court has recognized that just because you can put the same kind of wording, you actually have to look at the facts and the circumstances. In Gianelli, they said that a chess press is not a rowing machine. And they said those were non-analogous art. And they talked about the one not being made to, designed to, or configured to be used for the other. And they talked about you could injure yourself. Right. They were completely opposite. One pushed and one pulled. Right. And I would say... It would be a little distinguishable from two pieces of equipment where we're both looking at the strength and the lightness of those equipment so that there ought to be some interchangeability or relevance to looking at the other. But here they're completely different. Again, that violent contact, the hitting, the non-contact normally with the grounds. What's our standard of review, sir? Is there substantial evidence on this question of the pertinence of the prior art? Well, what a reference teaches is a question of fact. And of course, obviousness is a legal... That's what I'm trying to get at. It's whether... If it's not supported by substantial evidence. Right. Your colloquy with Judge Chen seemed to establish that there are some traits in common between these two kinds of rackets for the purposes you're trying to achieve, strength, durability, etc. So those are data points that go on the substantial evidence scale. But that's only at the most superficial level. And again, I say, if you actually look at the sports, they are so different that no one would look at them. Is there evidence... It's sort of like the consequences of taking an issue away from the juror. You're saying no reasonable juror could conclude that a person of ordinary skill in the art who was trying to improve the lacrosse team would ever look at a tennis racket. So is there any evidence in the record? Yes. A declaration from an expert? Not a declaration from an expert. But let's go back to basics. These facts of the differences were put in the record. There is no contrary argument. There's no finding against the sports being completely different. So that's one point. Point number two is it's up to the board to prove, or the patent office, to show obviousness. It's not up to me. They have the burden of proof. They didn't show it here. All of the evidence, the factual evidence, shows that they function differently and operate differently. If you look at... The carbon fibers in the tennis racket aren't serving some different overall purpose than the titanium fibers and carbon fibers in your lacrosse racket. Actually, they are. In the sense that, as I read Umloft, they said, you want to put these titanium fibers in there into your tennis racket to make your tennis racket stronger and also keep it lightweight. Why is that any different from how you are using titanium fibers in your lacrosse stick? Because the functions are different in the sports. You don't... Actually, it's about the same properties, right? Is that in your specification? Umloft... Is that what you said in your specification? You talked about high strength and lightweight. Right. And you can talk about that... You can talk about that in a lot of contexts and that doesn't make them related. I mean, a lot of things are lightweight. A lot of things are durable. But that doesn't make those things analogous. There are ten... If you look at Umloft, it has a chart and it identifies ten characteristics. Eight of those characteristics are completely unrelated to lacrosse. So, I mean... You know, I keep coming back to... In the law, in Ray Clay, it talked about a... We had a petroleum storage tank versus a naturally occurring reservoir. And the difference was, they said, look, the subterranean of the reference is not structurally similar to... Does not operate... Listen, does not operate under the same temperatures and pressure and other conditions and does not function the same way. And it cites Ellis, which talks about the similarities and the differences are to be looked at. And here, I don't think you can take just a superficial five mile above the ground view and say, oh, they're both sports, they both have these similar characteristics and not look at the real view of what's happening in those sports. I mean, the board in 2009 said, we're not gonna look at a golf club. You know, a golf club. That was the right decision. I mean, that's non-analogous. I mean, they hit and they swing and it's a sport. And I submit that when you actually look at the two sports, they are not analogous sports. They're very, very different. You're well into your rebuttal time. Okay. Before you lose all your time. I think the one last, I hit my two points and the one last point I was gonna say is we have had, this case has been pending for eight and a half years, these claims. We've had three searches. We've had three appeals to the board. And if you decide in our favor, please order the patent office to issue the patent. Thank you. We'll restore a minute of rebuttal. Mr. Lomarca. May it please the court. Appellant's primary argument, which we heard here today, is that tennis rackets and lacrosse sticks do not come from the same field. They're not analogous. Let me read to you, and I think Judge Chen quoted this earlier, mentioned earlier. Let me take you right to the board decision, page A-9 of the joint appendix. The board responded to that exact argument that was made by Appellant. And the board said, since tennis rackets and lacrosse sticks are both sports equipment, with similar concerns of strength, durability, and weight, one of skill in the art would have logically looked to other sports equipment. So how far do we take that? Could that be applied as well to baseball bats, to golf clubs, to... I think it could, Your Honor. For example, there is evidence in the record, not in this rejection, but in the record, where they looked to motorcross, BMX bicycles. The frames were made out of composite materials for strength, and the lacrosse industry borrowed that technology to make a composite lacrosse stick. I can show it to you. It's in the appendix. That's an example. But the point is, we're not going to use a lacrosse stick as a tennis racket, and we're not going to use a tennis racket as a lacrosse stick. What we're doing here is we're in the lacrosse field. Originally, they were made out of wood, as Judge Clevenger mentioned. Later, I think in the disclosure of the specification, as well as if you read the background of the prior art, they talk about lacrosse sticks were all metal. They were, like, all aluminum. The whole stick was metal. Then from there, they evolved later into this composite area. The same thing happened in tennis rackets. Originally, I used to have a wooden tennis racket that my dad gave me. It was heavy, and I had to keep it in a compression frame to keep it from warping. Later, they came out with aluminum tennis rackets, which were nicer, but they were all metal. Now, they make composite tennis rackets. Basically, the evolution of sporting equipment, when we're talking about sticks and things that we swing, it's always beneficial if we can give that athlete something that's lighter and stronger. I mean, that's basically what happened here. An applicant came forth and said, hey, we've got these lacrosse sticks that are out there in the field. Everyone's using them. We'd like to make them lighter and stronger. We're going to borrow the composite materials that are out there and use those composite materials in our lacrosse stick. Well, in fact, the specification... Your argument is any sport is limited to sports. I mean, if the technology was an airplane wing, you wouldn't say it was... Yeah, I mean, I don't want to just say any sport, but in this case, we're talking about sticks or frames that a user holds and swings. So lightness is important. Strength is important. There's going to be impact, and even in the tennis field, it's true, just like, you know, opposing counsel says, you're not going to use that tennis racket to go beat up your opponents with the tennis racket, but at the same time, you are hitting a ball at a very high velocity. For example, when these professional tennis players serve, I believe it's like 110 or 120 miles an hour, they're hitting this tennis ball. That tennis racket, although the ball is hitting the strings, it has to withstand a lot of force, and the tennis racket has to have qualities like lightness, durability, and strength to be equipped to do that. So the benefits of composite materials like plastics with carbon fiber and titanium fiber benefit that field to make that racket lighter and stronger. Exactly the same concerns that exist in the lacrosse field. The lacrosse field wants a stick. They want that stick to be lighter and stronger. They're going to use these well-known composite materials to help them do that. So it's our position, as the board pointed out, as the examiner pointed out, they made findings. By the way, it is a question of fact, Your Honor, whether or not it's analogous art. They made findings in the record that it basically is analogous art, and an ordinary artisan would look there, but even if you disagreed with us that if they weren't really in the same field, and we had this theory that tennis is so different, they're still seeking to solve the same problem, which is really the second part of that test, that if it's not in the same field, we're seeking to solve the same problem. I think a case that might help us remember that is the Icon Fitness case. In that case, we had a treadmill, which was a training device, and it was a folding treadmill, and I believe the prior art that was cited was a folding hospital bed. Well, clearly those aren't in the same field. One's a hospital bed, one's a treadmill. Nevertheless, that was deemed, in that case, seeking to solve the same problem, foldability, portability, and yes, that was relevant art that that designer looked to. So, I mean, my point is here, even if you do agree with the appellant that tennis is different than lacrosse... Well, we're just talking about materials. What was the material of the tennis racket that the applicant here is trying to improve? It was a composite plastic material to start with? I think they started out... They give the history where they started out with wood lacrosse sticks, which led to all metal, and now we have composites, which are lighter and stronger. But this is a particular improvement over a composite? Is that what this is? No, if I take you to the specification, let's just look at that for a second, because that might be helpful. I can take you to the paragraph. First of all, when you read the specification, the centerpiece of the invention, really, in the specification is the modular separation of multiple pieces to put your lacrosse stick together. That was kind of the basis of the design. But they also mentioned in the spec, if you go to page A-17, paragraph 17, Your Honor, they talk about the telescoping shafts, but they say, may be reinforced by ribbing or material selection, such as titanium, carbon fiber, or other composite mixtures, or other structural reinforcements. So what they're talking about is how do we take a lacrosse stick, make it stronger? One way to make it stronger and keep it light is to use materials like composite materials. What I'm trying to get at is, if you took the ordinary person's skill in this art, he's down at his laboratory table, and he's got a prior art lacrosse stick, and he's trying to make it lighter and more durable and stronger. And he has, obviously, the ordinary artisan has access to a lot of materials, plastics, woods, metals. And wouldn't the ordinary artisan sort of think to himself, well, what kind of materials are available for achieving these purposes? Well, I think the question you're asking is very consistent with the board and the examiner's finding. I mean, it's just wholly apart from a reference to a tennis pitch. I would just say, well, the ordinary artisan has knowledge of materials. Like, for example, it's about cement. Well, you wouldn't want to use cement. That would make it more durable, but it would make it very heavy. So you might say, well, what about materials? What kind of metals are there? Copper? Well, that's too expensive. But what about titanium? Wouldn't the ordinary artisan just be likely to look around the workshop for things? Yeah, I mean, I'm not disagreeing with you, but I think you're actually asking, is it even broader than that? Not do we just look to sporting equipment, but would we look just to the field of materials? Right. And I don't see any reason why they wouldn't. In fact, some of the references that were cited and are included in the joint appendix that were in the rejections that the board never reached because they felt they were accumulative to these rejections, I think one or two of those references actually were where they used composite materials in the aircraft industry, where they were just focused on the material qualities that they were lighter and stronger. In fact, I think if we went back and looked at it, the concept of a composite material comes from the aircraft industry. I mean, that's where it was first sort of invented and sort of developed. And then all of these other industries, like the golf club industry and the tennis industry and the lacrosse industry, borrowed the benefits of those materials and used them in their equipment. I mean, that's basically where we're at. So I mean, our position is, the board and the examiner's position and the government's position is that, yeah, an ordinary artisan would know to look to this tennis racket because it had a composite material that helped make it lighter and stronger, and therefore it would have been obvious for an ordinary artisan to go ahead and use those materials in the lacrosse stick, as in Lewis. So that essentially addresses the argument of Appellant. The only other point that Appellant, I guess, did not make is the dependent claims which relate to the percentages, the ranges, and we address that in our briefs as to why we think those would additionally be obvious. Unless there's any further questions, I don't really have anything further, Your Honor. Okay, thank you. Once again, just three quick points. Your Honor mentioned what would people look at, and after three searches by the examiner, so this is a lot of time, they have not been able to find a single reference where carbon fiber was used. So, I respectfully submit to Your Honor that carbon fiber would not have been in the thoughts of that person in the basement. Second, I'd like to again emphasize the In Re Clay decision, where they said it's important to look at the functions, and here the function of a lacrosse stick and a tennis racket are in fact entirely different. There's no catching, you have hitting and contact with the tennis racket. And third, a reference was made to the tennis ball and how fast it travels. Well, a tennis ball is empty in the middle. It's not hard. As at least Judge Clevenger knows, a lacrosse stick ball is really hard and it is thrown in excess of 100 miles an hour during the game. Thank you. Unless you have questions. Thank you. We thank both counsel. The case is submitted. That concludes our proceedings.